No. 16,043.

LOUNDER *v.* JACOBS.
(205 P. [2d] 236)

Decided April 4, 1949.

Mr. A. D. QUAINTANCE, Mr. FRANK N. BANCROFT, Mr. WILLIAM D. JOHNSON, for plaintiff in error.

Mr. F. W. HARDING, ONALEE BROWN, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error was plaintiff in the trial court and we will herein refer to the parties as plaintiff and defendant as they there appeared.

On October 19, 1946, plaintiff filed his complaint in damages for malicious prosecution praying for one thousand dollars actual damages, five hundred dollars exemplary damages, and for body judgment. The defendant answered and counterclaimed praying for five thousand nine hundred twenty-six dollars. On trial to a jury, a verdict in plaintiff's favor was returned assessing his actual damage at five hundred dollars and exemplary damage at two hundred fifty dollars and no body judgment. The jury found against defendant on his counterclaim and he brings error.

According to the record, plaintiff and defendant each owned land in Jefferson county and for irrigation purposes were users of water taken from the Alford Lateral to The Farmers High Line Canal and Reservoir Company's main canal. Plaintiff's rights were four inches of statutory water and the defendant's right was twenty inches of stock water. Plaintiff's point of diversion was toward the head of the lateral while defendant's was

toward the lower end. During the season of 1946, the water users under this lateral were experiencing a shortage of water and the evidence concerning that matter will be summarized later. However, on the 27th day of July, 1946, defendant Lounder swore to a criminal complaint before a justice of the peace in Jefferson county against the plaintiff for stealing water. Plaintiff was arrested and admitted to bail, and the case was later dismissed by the deputy district attorney, apparently without consulting Lounder, the complaining witness.

Plaintiff alleged that defendant maliciously and without probable cause procured plaintiff to be informed against by the district attorney for the crime of stealing water; alleged his arrest and the requirement for bail and that the charges were dismissed and the prosecution terminated; that he was damaged in business, financial loss, mental suffering, humiliation and embarrassment and expense of counsel; that the action is founded in tort, and prayed for damages and body execution.

The defendant answered, denying all of these allegations and alleged that plaintiff, during the time involved, was taking water which did not belong to him and did so without right and that by reason thereof damage for loss of crops accrued; alleged that the action was founded in tort, prayed for damages in his counterclaim and for body execution.

As hereinbefore indicated, the difficulty arose over the taking of irrigation water from the lateral ditch by plaintiff which defendant claimed belonged to him. Both had rights to water from the ditch, plaintiff a right to statutory water; defendant, to stock water. Plaintiff ran much of the water that he took into a reservoir and apparently irrigated from the reservoir.

In 1945, the defendant seeded and planted his land to a crop which did not mature on account of the lack of water and he reseeded the land in 1946. About June 24, 1946, he began to have difficulty in securing suf-

ficient water. He went up the ditch each day to keep it cleaned out and said that he didn't know what was happening to his water. Later, he consulted the ditch superintendent, who came to defendant's home on Sunday, July 14, and walked with defendant up to the plaintiff's box. Defendant and the ditch superintendent were accompanied by Mr. Rusho who has land under the ditch. There is a conflict as to what was said to the plaintiff at that time. Plaintiff said they were trying to find out why Mr. Lounder and Mr. Rusho didn't have any water and that Mr. Paine, the ditch superintendent, was with them trying to help them, and they finally decided that it would help if a higher crest was put in plaintiff's box and that plaintiff did not object to that being done as he wanted anything that would help them get water. He testified that the ditch superintendent said that he did not believe that plaintiff had any water, that he lived on the Braun place and it had no water. Plaintiff said that he didn't know whether he lived on the Braun place or not and he testified that they did not tell him to shut the water off; that on the next day, plaintiff went down to see his abstract to find out whether he lived on the Braun place which didn't have any water; that on the evening of July the 8th, Lounder and Rusho and a Mr. Davis came to plaintiff's house and Mr. Lounder wanted to know "why I had turned my water back on, saying that I did not have any. I told him that I did have water and I had all the receipts for it."

The ditch superintendent, Mr. Paine, testified that he told plaintiff there was no statutory water at that time and told him to shut off the ditch. This situation existed without any real difficulty until the 27th of July when defendant caused the criminal information to be filed.

Plaintiff claimed four inches of water by virtue of warranty deed, dated June 9, 1942, which is plaintiff's Exhibit A. Defendant contended that plaintiff had

no right to use the water because plaintiff's right was only to statutory water while defendant's right was stock water. It is not clear that plaintiff knew the difference and apparently went on the theory that water was water and since he had bought and paid for water that he had the right to use it. However, all of these questions, the evidence being in conflict, were submitted to the jury under proper instructions and were resolved in plaintiff's favor so far as good or bad faith in the taking of the water is concerned, and being sufficiently supported by the evidence, the jury's verdict will not be disturbed.

The defendant grounded his defense largely on his claim that plaintiff was taking water that did not belong to him and was, therefore, guilty of stealing the water as charged in the information, and probable cause existed. This brings us squarely to the consideration of the essential elements required before this suit for malicious prosecution could be maintained.

■ The essential elements which must concur to support an action for malicious prosecution are, as applied to this case, the institution of the criminal action; its legal causation by the defendant; its termination in favor of plaintiff; the absence of probable cause for the complaint; and the presence of malice and damage to plaintiff. If any of these are lacking the action must fail.

■ Our Court of Appeals has said, "Any motive, other than a desire to bring an offender to justice, is a malicious motive; and, if it is clear from the evidence that no reasonable or probable cause existed, malice may be inferred." *Brooks v. Bradford*, 4 Colo. App. 410, 36 Pac. 303. Defendant's own testimony concerning what he told the district attorney at the time he requested a complaint to be filed is as follows: "A. I see. I told him Mr. Jacobs was stealing my water for which I had stock and shares in the water company and I told

516

him that I had a right to use this water and I wasn't getting it and that he had been asked—and told that he did not have any water in that ditch—and had been asked and told to shut it off, which he wouldn't do; and therefore the only thing I could see to do in order to save my crops from being a total loss was to come and see him, Mr. Molholm, and have him file a complaint if he thought that was the proper procedure." This testimony clearly indicates that the controlling motive of defendant was to secure water for his crops and not specifically to further the ends of justice or punish the plaintiff as an offender against the criminal law. If this be true, and the jury seemed to so find, then it was a malicious motive, and unless reasonable cause existed, malice may be inferred.

That a criminal action was instituted, and that defendant was affirmatively active and responsible for its commencement, there can be no doubt. He signed the complaint and made the statement, hereinbefore set out, to the deputy district attorney. On the matter of the termination in favor of the plaintiff, all that is required is that there be an end to the particular proceeding favorable to plaintiff. Plaintiff alleged defenses and submitted testimony on that question. This leaves only the matter of the presence or absence of probable cause. Want of probable cause is an indispensable element, and it is the very substance and pith of the action.

Here, we find the defendant with other remedies for the protection of his rights without resort to the criminal prosecution. Plaintiff clearly was exercising, what was determined to be, technically and legally, a mistaken idea of his rights; and defendant knew that plaintiff claimed the use of water under rights that he had bought and were deeded to him, although there was a distinction between statutory water and stock water which developed on the trial. Legal processes, other than criminal prosecution, were available to defendant

under such circumstances and when defendant proceeded as he did, it was without regard to the rights of plaintiff and in a spirit of indifference as to the injury that might result. The usual standards of human judgment and conduct determine what is and what is not probable cause.

Instructions No. 7 and No. 8 are as follows:

### "Instruction No. 7

"You are instructed that the gist of this action is whether or not the defendant in the exercise of good faith believed the plaintiff to be guilty of the charge made against plaintiff by defendant, and if you believe from the evidence that the defendant did in good faith believe the plaintiff guilty, you are instructed that probable cause existed, and you will find your verdict for the defendant on the complaint."

### "Instruction No. 8

"You are instructed that any motive other than to bring an offender to justice is malicious; and if you find plaintiff has proven malice and lack of probable cause by a preponderance of the evidence then your verdict must be for plaintiff on plaintiff's complaint unless you find by a preponderance of evidence that before the criminal prosecution was initiated defendant made a full and fair disclosure of all facts within his knowledge to Mr. Molholm, the Deputy District Attorney, and that as a result thereof a criminal complaint was filed against plaintiff, in which event your verdict on plaintiff's complaint must be for defendant."

These instructions were properly given by the court and afforded the defendant full opportunity for these questions to be determined by the jury. The jury's verdict was against him and the evidence being sufficient to support the verdict, it will not be disturbed.

In accordance herewith, the judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE STONE concur.